IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| OFFICER DOE; and SEATTLE POLICE OFFICERS GUILD, | No. 87857-3-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SEATTLE POLICE DEPARTMENT; and THE CITY OF SEATTLE, | |
| Respondents, | |
| and, | |
| REQUESTOR # 1; and REQUESTOR # 2, | |
| Defendants. | |

HAZELRIGG, C.J. — In this third-party litigation under the Public Records Act,[1] Officer Doe, a Seattle Police Department employee appearing under pseudonym, and the Seattle Police Officers Guild appeal from the order entered following a trial by affidavit. On appeal, Doe and the Guild do not challenge the portion of the trial court's ruling that granted their request to redact Doe's identifying information from certain records responsive to two public records requests. Rather, they assign error to the court's rejection of their separate request for further declaratory relief that sought such redactions on behalf of all existing and future Guild members for all similar future public records requests on the basis

---

[1] Chapter 42.56 RCW.

that it was nonjusticiable. The court did not err when it denied such relief, and we affirm.

FACTS

The following circumstances prompted both the creation of the records responsive to two public disclosure requests submitted to the City of Seattle and the complaint later filed by Officer Doe and the Seattle Police Officers Guild seeking redaction of those records.

In November 2021, Doe, a detective with the Seattle Police Department (SPD), investigated Abdullahi Ali on suspicion of having committed robbery. Doe recommended that Ali be charged with multiple counts of robbery in the first degree. Thereafter, and continuing on through August 2022, Ali and his associates filed more than 30 complaints against Doe with the City of Seattle's Office of Police Accountability (OPA). Their complaints alleged, among other things, that Doe was racist, trafficked in controlled substances as part of a gang, had "rubbed" a handcuffed suspect in a sexual manner, and after several such OPA complaints had been filed against Doe, that Doe had offered to lessen Ali's criminal charges if Ali withdrew his complaints against Doe.

From these 30 complaints, OPA opened seven investigations into Doe, and the City's Office of Inspector General (OIG) also opened a separate investigation. Each investigation determined that the complaints to the OPA against Doe were "not sustained."[2] OPA concluded that the complaints relied on fictitious witnesses

_____

[2] Ali was later arrested by the Seattle Police Department on suspicion of felony stalking of Officer Doe under RCW 9A.46.110(5). The certification for determination of probable cause filed against Ali regarding that arrest was based, at least in part, on the conduct described herein.

and none had merit.[3]  The final determination of the OIG stated, "Based on this preliminary investigation and analysis of its aggregated information, OIG finds that the complaints lodged against [Doe], discussed within this report appear to be without merit."[4]

During this time, two public disclosure requests were submitted for the records related to OPA's investigation into Doe.  The City notified Doe, as well as the Seattle Police Officers Guild, that records responsive to those requests contained certain identifying information regarding Doe and, pursuant to City policy, it intended to disclose those records without redacting that information.[5]

Doe and the Guild subsequently filed a complaint against the City and individuals identified as Requestor #1 and Requestor #2.  Their complaint alleged the conduct by Ali and his associates, described *supra*, relied on several privacy-related statutory exemptions under the PRA to argue that Doe's right to privacy under that act would be violated unless the City appropriately redacted Doe's identity, and requested that the court issue a permanent injunction that ordered the City to redact Doe's identity from those responsive records pursuant to the PRA.[6]

The parties later agreed to a trial by affidavit.  Significantly, in Doe's and the Guild's trial brief they presented, for the first time, an additional request to the court:

---

[3] During this time, Ali, through his counsel, also attempted to withdraw all of his OPA complaints against Doe.

[4] The trial court found, regarding the specific "investigations of allegations of misconduct against Officer Doe" set out *supra*, that Doe "has been cleared of any wrongdoing.  OPA and OIG determined all the allegations of misconduct to be unfounded."

[5] SPD notified the Guild of the public records requests pursuant to its collective bargaining agreement (CBA) with the Guild.

[6] Doe's and the Guild's complaint also requested declaratory relief that disclosure of the records in question without the requested redactions would violate the PRA.  This relief inhered in their request for a permanent injunction from the court under the PRA.

> *Beyond Officer Doe's rightful claim that her identifying information be exempt from disclosure*, the Guild also requests this [c]ourt enter [d]eclaratory [j]udgment holding that all Guild members who will, in the future, be the subjects of *unsubstantiated* allegations of racism, official dishonesty, corruption, and targeted/retaliatory policing have their identities exempt from disclosure under the PRA's privacy exemption and, if applicable, per RCW 42.56.240(2).[7]

(First emphasis added) (footnote omitted).

The trial by affidavit commenced in October 2024, and the court later entered a detailed written order setting forth its findings of fact and conclusions of law.[8] Based on the facts before it, the court concluded that the PRA granted Doe a right to protect their identity as contained in the records responsive to the public disclosure requests in question and ordered the City to redact Doe's identifying information from those records.[9] The court then rejected as nonjusticiable Doe's and the Guild's request for additional declaratory relief.

Doe and the Guild timely appealed.

## ANALYSIS

---

[7] RCW 42.56.240(2) governs the PRA's exemption applicable to "[i]nformation revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property."

[8] In its order, the court found that the requestors "never appeared or participated in this action, and failed to appear at trial" and, accordingly, ruled that they defaulted at trial.

[9] Additionally, as part of the court's order, it ruled, pursuant to the CBA provision, that "an officer's personal identifying information shall be redacted from all records released to the extent permissible by law," and the PRA and case authority authorizing the redaction of identifying information when an exemption protects an officer's identity, the [c]ourt declares that the City shall redact identifying information and information readily associated with identity to include name, personal characteristics (age, race, weight/height, hair color, etc.), badge/ID number, work phone number, work e[-]mail, photographs, and personal non-work information (i.e., address, personal number, etc.).
The parties do not challenge this ruling on appeal.

- 4 -

As a significant threshold matter, Doe and the Guild do not dispute the portion of the trial court's order that resolved whether the City must redact Doe's identifying information from the records responsive to the two public records requests at issue here. This was the dispute set forth in their complaint that prompted them to seek relief from the trial court. Instead, they challenge the trial court's decision that rejected as nonjusticiable their separate, subsequently added request for further declaratory relief. As explained *infra*, the court did not err in so concluding.

The Guild sought such additional relief pursuant to the Uniform Declaratory Judgment Act[10] (UDJA). Our Supreme Court has long instructed that the UDJA

> should be liberally interpreted in order to facilitate its socially desirable objective of providing remedies not previously countenanced by our law. However, a plaintiff is not entitled to relief by way of a declaratory judgment if, otherwise, [they have] a completely adequate remedy available to [them].

*Reeder v. King County,* 57 Wn.2d 563, 564, 358 P.2d 810 (1961).

In addition, although the purpose of the UDJA "is to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations,'" before such relief may be afforded, a party must meet "certain threshold requirements," including demonstrating that a justiciable controversy exists between the parties to the litigation in question. *Bloome v. Haverly*, 154 Wn. App. 129, 140, 225 P.3d 330 (2010) (quoting RCW 7.24.120).

In order to demonstrate a justiciable controversy, a party must establish

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having

---

[10] Chapter 7.24 RCW.

genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Id.* at 140-41 (alteration in original) (internal quotation marks omitted) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). The party seeking relief under the act must establish the presence of all four factors in order to prevent the court from entering "'the prohibited area of advisory opinions.'" *Id.* at 141 (internal quotation marks omitted) (quoting *Branson v. Port of Seattle*, 152 Wn.2d 862, 877, 101 P.3d 67 (2004)).[11] Indeed, as stated by a well-respected legal scholar,

> The chief problem in obtaining declaratory relief lies in the rules of justiciability, rules that courts will not issue advisory opinions, decide moot cases or those that are not ripe, or deal in any dispute that does not count as a case or controversy. Although people might settle legal arguments between themselves by going to the law library or calling the librarian, *they cannot call on courts in the same way*.

DAN B. DOBBS, LAW OF REMEDIES 8 (2nd ed. 1993) (emphasis added).

On appeal, Doe and the Guild assert that the PRA's exemptions should be extended to preclude the disclosure of the identities of "all Guild members who will, in the future, be the subjects of unsubstantiated allegations of racism, official dishonesty, corruption, and targeted/retaliatory policing." (Emphasis omitted.) They aver this request was based on a justiciable controversy because it was

---

[11] We note that we have recognized that "[i]f the four justiciability elements are not met, a court may still enter declaratory judgment if the issue is one of major public importance." *Lewis County v. State*, 178 Wn. App. 431, 439-40, 315 P.3d 550 (2013). However, we have further recognized that "[c]ourts will apply the major public importance exception only in rare cases where the public's interest is overwhelming and the issue has been adequately briefed and argued." *Id.* at 440.

Doe and the Guild, in their reply brief, concede that they have not relied on this exception. Therefore, we do not consider it.

premised on an actual, present, and existing dispute between them and the City. We disagree.

To the extent that their request was based on the parties' dispute regarding whether to redact Doe's identifying information from the records responsive to the two public records requests pending before the City, such dispute was extinguished by the trial court's ruling in their favor and granting a permanent injunction regarding Doe's identity and identifying information. Furthermore, insofar as their request was based on actual and existing public records requests submitted to the City and potentially responsive documents that contain relevant identifying information about any of its members other than Doe, they do not provide argument in support of the proposition that they presented any evidence of such at trial. Nor did they provide the trial court or this court citation to their complaint wherein any such allegation could be found. Given the absence of proof of any present, actual, and existing dispute, a judicial decision on the additional legal question they proposed just before trial would, without more, constitute an improper advisory opinion.

To the extent that their request for declaratory relief was based on a need to obtain the redaction of existing or not-yet-existing records responsive to not-yet-submitted public records requests identifying any of the Guild's existing and future members, then such a basis is plainly not an actual, present, and existing dispute that existed between the parties at trial. Rather, such a basis is speculative in nature and the legal disagreement on which it rested is, based on the facts before us, purely hypothetical. Thus, Doe and the Guild fail to show an actual, present,

and existing dispute, one of the required factors necessary to establish a justiciable controversy. Accordingly, they do not establish that the trial court erred when it denied their request as nonjusticiable.[12]

Affirmed.

WE CONCUR:

---

[12] Given our resolution of this matter, we need not consider the remaining justiciability factors and further decline to consider the merits of Doe's and the Guild's request for additional declaratory relief.